Good morning, Judge. Patrick Bailey, appearing on behalf of Appellant Ron Tudor and Tudor-Saliba Corporation. You know, the issues in the case are pretty concrete, and we've allocated a fair amount of time for you, but you may not need all of that 20 minutes. I concur. I concur. Our position, quite succinctly, is when the district court specifically found below that Mr. Tudor's lawsuit and Tudor-Saliba's lawsuit was not vexatious, was, in fact, involving non-frivolous claims for most of the work, and that there were two issues of first impression. This is hardly the type of case that is extraordinarily unusual circumstances that would justify a departure from the normal rule of not awarding attorney's fees to the defendant. Well, let me just ask you a couple of questions. I actually have different parts of the issues that are raised. But, you know, if a plaintiff prevails on some of the claims, not all of the claims, where the non – where the – on the claims that the plaintiff does not prevail on, and where they're distinct, separate, the plaintiff doesn't get attorney's fees for those. Now, why doesn't – and even, you know, in the case of Simon v. Robbins, there are multiple plaintiffs, multiple defendants, and we zeroed – we – I was a trial judge in that case, and I remember very well what happened in that case. But the court – this court ordered that at least as to one defendant in a whole multiple group of defendants, where I had found that the claims by the plaintiff against that defendant were groundless, and even though the claims against him arose out of – against that defendant arose out of all of the basic facts, the court said, you know, he's got to pay – the plaintiff has to pay his attorney's fees. So your case – your case is just, you know, a variation of that. You filed a claim – claims that the district court found, I guess, five of them to be without merit and two to be non-frivolous, basically. And they seem to be somewhat distinct and separate from the constitutional claims. So why shouldn't the district court – you know, what – why isn't that not right? The narrow exception that drives the district court to make an award is, I believe the case law has demonstrated, is found in unusual factual circumstances. The Salmon case was exactly that case, as I read it, because one of those defendants did nothing more than draw a diagram of the scene, was so tangential to the – the fabric of the claim for the civil rights. So – and like, for example, the new case that came out, although unpublished, Peters, that was cited by the appellees, had a very bizarre – Your two statutory claims are distinct. Yes. They are distinct. They may arise from the basic events that occurred. I mean, he wasn't allowed to land his plane at this particular airport. But these claims are separate. They're easily categorized and treated differently than the constitutional claims. You know, really, you look at them, they really didn't have much merit at all. So I don't know why it would be wrong not to allow the district court to award – in the district court's discretion to award attorney's fees for that – those distinct claims. Now, the – it's another question about the amount and how the district court goes about deciding how much of the fees, total fees, should be allocated to those two frivolous – non-frivolous claims. Addressing that question, our Supreme Court has said that this analysis should be made at the beginning of litigation and not at the end, and at the beginning of litigation to address the court's question about constitutionality. There was, in fact, from this Ninth Circuit, a constitutional case involving the Santa Monica Airport Association versus the city of Santa Monica, which did rise to the level of equal protection. And it was an access case. It was an access case involving a categorical ban of jets. Now, here – I'm sorry. That's true, but – and we could go back to the merits of Vermont, but on the attorney's fees issue, where's the abuse of discretion here? I'm sorry, Your Honor. Where's the judge's abuse of discretion here? Isn't that what we're reviewing? Do you make a legal error? And where's the abuse of discretion in how he calculated the fees? Where is the error? To the – And do we have circuit law on the award of attorney's fees in these split award cases? We don't have any Ninth Circuit law on it, I believe. I don't think we have any clear Ninth Circuit law. No, but where is the abuse of discretion? I believe that the quantification of the fees was done without evidence into the record. I believe the abuse of discretion came from, here are our legal bills. Granted, most of the work, as acknowledged by the court, was directed at the non-frivolous, non-vexatious claims. No one presented to the court, Your Honor, here's exactly what we did on this issue and this issue, and that justifies it. What the appellees did was dump it in the court's lap and say, see if you can figure it out. And we believe that that absence of the record created an abuse of discretion. That's a different question from entitlement. Yes. How the court apportioned the fees. And, you know, if you're going to – under the low start – This was always – as a district court judge, this was always frustrating because the lawyers would do just this. They would take all their fees and they'd dump it on the court and say, you figure out how much you're going to give us. Right. And the circuit had said, well, you've got to do – we follow the low start approach. The court first determines the total hours, finds the – determines what the reasonable rate is, and then calculates the low start, and that becomes the starting point, and you can adjust that up or down, you know, excessive time, duplicate effort, wasted resources, client judgment, attorney billing judgment, all kinds of factors that you use to bring that low start number down to the correct number. Extensive prevailing, there's all kinds of factors you can consider. And sometimes where you have frivolous claims and non-frivolous claims and they're just so connected, and you can't separate them out, then the party either gets everything, if they're the prevailing plaintiff, or probably in the case of a prevailing defendant, might get everything as well. But if you can separate them out, then the court has an obligation, I think, to allocate. And that's what the district court tried to do here. I understand that, and I think that's the precise response that I should have given to Judge Brunetti when he asked, where is the abuse of discretion? I believe that that came about because they are so intertwined. They are intermingled. The fact that these two areas of the Airport Noise and Capacity Act and the Airport and Airways Improvement Act have issues of, is there an implied right of standing? There is a direct connection between Section 1983 and that being a federal statutory claim. Because they are so intertwined and because there's no oddball fact pattern here, I believe that's an abuse of discretion. Well, the problem with that, though, is that the – this all arises from the same instance, the same circumstance. But the legal analysis with respect to those two statutory claims was entirely different and distinct. The legal issue and the briefing that was devoted to those issues is easily separable from the analysis, the analytical and legal analysis that was devoted to the constitutional claim. And I think it's entirely possible and reasonable for the district court to make that kind of distinction here. And as Judge Brunetti said, why is that abuse of discretion? Because it is so intertwined and because the court recognizes that these are definite, separate claims, this would put the Ninth Circuit in a position of announcing to its circuit world that make sure if you have valid claims, you don't intermingle them with claims that will be decided down the road to be non-meritless. So you're asking us to adopt law out there in the world that would say intertwined claims should not produce the entitlement to attorney's fees? Not quite that simply. Not quite that simply. But when you have two stand-alone claims where you have a connection with Section 1983, to try to carve that out with a scalpel and say, well, we've now discovered by summary judgment time that you don't have a substantive due process or procedural due process denial. Therefore, we're going to punish you. And I don't think that furthers Congress's intent to have a vigorous defense of the constitutional rights and not to chill them. Do you want to save the rest of your time for rebuttal? Thank you, Your Honor. Okay. Good morning. May it please the Court. Eric Bills for the Appalese Freeman Memorial Airport Authority in the City of Haley. The question that you had asked of counsel about why isn't it proper for the trial court judge to have made this allocation between fees based on the meritlessness of the constitutional claims and the colorability of the two statutory claims, this is exactly the kind of decision that trial court judges make in a wide variety of other kinds of fee situations. You mentioned the example of the multiple defendant or the single claims against multiple defendant cases. The Supreme Court in Christiansburg itself recognized that you could have a case that starts out appearing to have merit and then is learned through discovery or maybe a change in law to lack merit. And the Court has the discretion to get into the middle of that claim and say, well, fees up to the point when it was no longer clearly meritlessness, no fees for that part, but we will award fees for after the part. There's really no difference here. Because of the way the issues were ultimately decided, Judge Windmill could clearly say these are separate and distinct issues. There was some colorability to the federal statutory claims because there was no circuit law on the question of private right of action on those two claims. But the question of whether there was a constitutional right to bring these claims in the first place, regardless of what the plaintiff's views on the merits of those claims were, is completely distinct. And that's exactly the kind of decision that trial courts ought to have the discretion to make and the kind of discretion, excuse me, that the Supreme Court has said trial courts have the discretion to make. Well, except, you know, except some circuits read Christianburg differently. I'm sure you recognize that. At least two circuits say the action has to be entirely frivolous in order for the defendant to be entitled to attorney's fees. Right? Now, how do you get around those cases? Well, Your Honor, I think in the case of the Sixth Circuit, well, I should say this. Neither of those cases, those circuits, have explained in any rigor why, based on language — Well, there's not too much rigor on either side. Well, I think that the better case, as exemplified by the eleventh, the Quintana case from the Eleventh Circuit, if you try to balance the two goals that you're trying to balance in awarding fees to prevailing defendants, on the one hand, not wanting to discourage colorable, if aggressive, claims by plaintiffs, versus not wanting to punish, in effect, defendants for having defended against meritless claims. And this is a fee-shifting statute. This isn't a punishing statute. It's simply prevailing party. If you divide a case and say, okay, certain parts of the case are distinct, and we can say these were meritless, prevailing defendants should get fees for those cases. The claims that are colorable — excuse me, that are colorable, no fees. That achieves, with surgical precision, the twin goals that are being served by 1983 in the case of prevailing defendants. I think that's the far more principled position, and it's best exemplified by the Eleventh Circuit decision in Quintana, as opposed to the decisions from the Sixth Circuit, and I believe it's the Second Circuit. The Second Circuit decision, by the way, doesn't say that there is this division rule. It really, in fact, that case was really more of a late-discovered issue that made it clear that it wasn't a meritless claim, and it didn't really add any costs, and so no costs were awarded. You would agree, wouldn't you, that — I don't know, maybe you wouldn't, but suppose you had a situation where, you know, the claims were all basically related, and it flows out of the same facts, and they're just, you know, variations on a different theory. And the district court says, ah, right-to-travel theory, that's just patently frivolous. But all these other claims are good. Nonetheless, they're also intricately connected. Even though you prevailed in that one non-frivolous claim, your award of attorney's fees is denied. That would be okay, wouldn't it? I think that would be possible, and I think that really gets to the point, is that the district court should have the discretion to make those kinds of decisions based on the facts and the law of the case presented to the judge. The rule the plaintiff proposes would take away that discretion in one particular class of cases that really aren't distinguishable from a variety of other classes of cases where judges make similar kinds of distinctions between claims with merit and claims without merit. The other thing that this position would do is put the entitlement of a prevailing defendant, the prevailing defendant's entitlement to fees, in the hands of the plaintiff, and how he chooses to plead his case. Because, for example, if Mr. Tudor had chosen to plead his case with, you know, his claim for equal protection and incorporated in that count a claim for 1983 relief, and so on down the line, instead of the way in which he did, which was a sort of unified 1983 count and incorporated by reference as all the other count claims, we wouldn't be having this discussion because each one of those claims would be a separate stand-alone claim. And yet what is it about the way that a plaintiff chooses to plead his case that should alter the application of Congress's direction in 1988 to award fees to the prevailing defendant? I have one other question for you on the amount. They also challenged the amount that the district court awarded. How did Judge Windmill come up with 20 percent? How did he do that? He just looked at it and said, oh, I think 20 percent is a good number? No, Your Honor. He said 20 percent. We presented it. How did he get – where is there a finding about the total hours that you submitted was a reasonable lodestar amount? I didn't see that in his order. I believe he made a finding on page – oh, I apologize. Your fee bill was for 440,000. Yes, for all the claims. For all the claims. And what he apparently did was he looked at that and he said, well, that amount is reasonable based on the rates and I guess the hours you claimed? The hours and the – But I didn't see anywhere where he said that was reasonable. I didn't see where – I mean, he just took 20 percent. Well, the 20 percent, Your Honor, came from – How did he do that? What he said was I've looked at the bills. Right. I've looked at the briefing. I've been followed – the court has been following the case and has a sense, has an understanding of how the parties allocated their time and resources on the case and determined that 20 percent of the effort was commensurate with what he had seen had been put into the case. Now, he didn't do that with respect to the $70,000 in cost. No, he didn't. Why didn't he do that? I think under Rule – under Rule 54, which is where the cost award was made, he had the discretion to make the entire award of cost without allocation, and he decided that was – That's not – 54D just pertained to statutory cost. My – my understanding is that it's a – it's not just statutory cost, Your Honor. I have a strange question, and you brought it up in your analysis. By pleading 1983 and then using that basis, coming up with various counts based upon various other basis for a 1983 recovery, different statutory provisions, whatever, you develop all these various issues you have to reach. However, underneath that all, there's one airplane, there's a weight restriction on one airport, and it's very simple. We don't have a complication here. The intertwining of the issues seems to relate to the fact you have this one airplane doing the same thing at the same place. There's nothing different going on. It's just the fact that because it's an airport and because we have an aircraft, because aircraft travel in the intercontinental or wherever, it sort of lends itself to say, well, let's take a look at airports and what control airports, let's look at what controls travel. And so as a result of that, we have these multiple counts, but basically underneath, one airplane, one weight limit, one runway. So how do we break that all out? You're saying, well, when you start breaking them out, because they're clustered under 1983, they still are various claims, but they really were done purposely, and maybe this is a pleading issue, because they wanted a constitutional challenge. They didn't want to go out and maybe they didn't see something else towards it, whatever. So how do we analyze that? Because we're now going to have to go out and take a look at this attorney's fees law and figure out how to resolve this U.S. 11th Circuit law. How do we resolve that relative to this pleading issue you raised? Again, I think this goes back to why district courts should have discretion. There certainly could be a case that is presented on an analogous fact pattern where the legal issues don't break out so distinctly as they did here. And in that case, you might want to look at the intertwined nature of the claims and so forth and be unable to divide them out and not make a war, but it is. Because the aircraft wasn't doing anything different. I mean, the facts are just absolutely solid. I mean, it's taking off or landing. In this case, I think it's taking off at a certain maximum weight, and that was it, period. The difference in this case is that although it is certainly true that the appellants wanted to elevate the case to a matter of constitutional significance, they couldn't. And the law was clear that they couldn't because they had not asserted any constitutionally protected right. And that was the basis of Judge Windmill's decision. And without even getting over that threshold, he could find that those claims were not only should have been dismissed on summary judgment, but were meriless. And then we have this separate issue on the statutory claims as to whether there was a proper right of action. So the fact that underlying it all, there might have been a common set of facts and issues that were interrelated. You never even got to them because of these threshold legal issues that really borrowed the suit from the outset. Well, but that, you know, this is part of the same question that both Judges Pius and Brunetti have been asking is there's no explanation, really, as to how Judge Windmill came up with 20%. I mean, you know, why is it so that, you know, the frivolous claims are 20% of the total? Because he doesn't explain it. He says he evaluated the briefs. He had monitored the case. He was aware of how it unfolded and made a determination of the effort put in. And I suppose if he had needed more backup, he could have asked us for that. He could have had a magistrate look at the bills. He could have asked for further briefing. I was just going to ask. In your submissions to him, did you attempt to identify how much was related to how many hours were spent on the non-frivolous claims or non-frivolous claims? We did not because, of course, we had sought fees. So you just gave it to the judge and said, here, you figure it out. I wouldn't put it that way, but we did give it to the judge. And he, if he made a decision like this. Well, that's basically what you did. You left it to him, right? I'm not. You didn't give him. Judge Windmill was very generous, you know. Well, the fee bill, I would profess that my Alzheimer's kicked in. I don't remember receiving it. But I'll go back and look at it. Was the fee bill detailed? I was just going to say, Your Honor, it was. It broke down by— Computer-generated detailed bill saying what each item was for? That's correct, Your Honor. And Judge Windmill has been, you know, he's an experienced judge. He sees bills all the time. So your point is that he can take a look at a detailed bill and make determinations within that discretion. Is that your argument? That is the point. And the flip side of that, Your Honor, is under the abuse of discretion standard, appellants have not come forward with any reason why it was an abuse of discretion. Yeah, we've had problems where if you do a bulk bill, in the old days you'd do a bulk bill, here's a $400,000 bill that has one number on it, and you have nothing to work off of. If we review the bill, and I will, you're saying it's detailed, so discretionary determinations could be made. It is detailed by timekeeper and day, with description of number of hours for every day or portion of the day, Well, I suppose then the next step would be you need testimony to explain the detailed bill. It's the only further thing you can do with that, right? Well, I think the answer is if the judge felt that he needed it to understand it. Well, yes, we saw that it says that, you know, we don't like, we don't want the district courts just to apply percentage reductions across the board, but that's some explanation of how they arrived at the percentage figure. And I remember as a district court judge, I always thought it was odd. You know, the circuit is placing too much of a burden on district court judges, but nonetheless, that was the circuit law. We couldn't just say, well, I think, you know, 5% is a good, you know, reduction here because they didn't do any billing judgment. Well, with respect, Your Honor, I don't think that is what Judge Windmill did. I mean, obviously he picked a percentage. No, but I can't, you know, when I looked at this the other day, in preparing for today's argument, I looked to try to figure out how he arrived at 20%. I can't figure it out. Now, I'll also tell you I didn't look at the actual submissions that were presented to him. Well, I'll say three things, Your Honor, and maybe I'm repeating myself, and then I'll stop unless there are further questions on this point. He did say that he had reviewed the record, the transcript, the billing records, that he had looked at the briefing and the relative effort placed in the parties by the effort in the case, and that he was familiar with the progress of the case and felt he could make a determination about the effort placed on each issue. He had in front of him detailed daily time records. I'm sorry. Go ahead. Finish up. It would allow him to make that decision. And he could make a decision of, well, I think based on those two things, he could fairly make a decision as to the effort placed by the defendant on the two groups of issues. You know, I will tell you this. I am a bit concerned, though, that if we do adopt your position on the merit, that is that even where we have frivolous and non-frivolous claims together and the district court has discretion toward fees, if you're going to do that, if we're going to allow that, then district court judges are going to have to be very careful about how they go about apportioning and determining how much should go to the frivolous and non-frivolous claims. You know, it's kind of a headache. I know. I used to have to do it. I did it many times. Do you know whether when Judge Windmill found the fees, the rate to be reasonable, the court feels that the rates charged by defense counsel are reasonable. Was he basing that on the prevailing rate in Pocatello? I'm sorry. Was he basing that reasonableness determination on the prevailing rate in Pocatello, Idaho? Do you know? No, Your Honor. He was basing it on the prevailing rate. I wouldn't think so. No. He was basing it on the fact that counsel ---- Shouldn't he have? I think he would have the discretion to look at the nature of the claims that were raised and the need for the particular kind of expertise in the case and make a decision as to whether that was a reasonable rate for that kind of expertise. He made no explanation about how he came to his conclusion as to what was reasonable and what he considered, right? He said, and this was on page 14, page 44 in the record, that after considering the expertise and experience of the lead attorneys defending an action and that an average flat fee for municipalities was applied, the court feels that the rates charged by the defense counsel are reasonable. Right. All he says is, I feel they're reasonable. He doesn't tell us how he got there. You know, what he considered, you know, what the prevailing rate is in Pocatello or in D.C. for that matter. I think it was the expertise and experience of the lawyers and his knowledge, his understanding of the market. Well, these claims are so frivolous. Why did he need such high-powered lawyers? Why did the city need such high-powered lawyers? Well, Your Honor, I think this was a case where, underlying it, there were more difficult questions, and we had to fight through the ---- all of the issues, allow some discovery to happen before we could get to these issues. Sort of like high-powered lawyer in, high-powered lawyer out. I mean, once a high-powered lawyer comes in, you have to fight the case, don't you? You know, Your Honor, every case is different. I think this was a case where the myriad of confusing and conflicting allegations and assertions, many of which turned out to be baseless by the admission and deposition of a client, put up a case that at first appeared, you know, capable of surviving a 12b-6 motion, and there really was no choice but to go forward and litigate the full case. Speaking of depositions, was that the bulk of the cost? I believe the bulk of the cost were deposition and travel. That's right. Travel is not something you get at a statutory cost, right? Maybe it's discretionary under 1988. I don't know. But you recall, you know, just a range of, say, what percent of the cost was travel cost? I don't, Your Honor. I could calculate that for you, but I don't have it on top of my head. One further thing I want to make sure is obvious. Judge Windmill carried this case from the beginning, so he saw and read the briefs, and he did not do this in the abstract, so he not only had all that, but he had to use his judgeship expertise to value what was going on in front of him. But that wasn't said. I mean, he did say he reviewed everything, but he did preside over the entire case, right? There was the earlier phases of the case that included most discovery. The case was supervised directly by the magistrate. Magistrate. But as far as the proceedings and the decisions, I'm not sure. Yes. Yes, Your Honor. It was Judge Windmill. Were this – I don't remember. Were these done on the pleadings, or did you have hearings before Judge Windmill? We had a hearing on summary judgment, but the only hearing before Judge Windmill. Okay. Thank you. Your Honor, I think that the record does demonstrate that Judge Windmill properly exercised his discretion and the award of fees is reasonably just. We ask that the decision be affirmed. Thank you. Thank you. Thank you, Your Honor.  The airport's affidavit supporting their petition for attorney's fees and costs fails to adequately separate out what percentage of fees were incurred on each claim, period, end quote. I believe if this court were to countenance this fee award, it would, in effect, invite dumping continually into the court's lap. Here are our bills. We generate them in time slips. Each one is a paragraph set out. Figure it out. Rather than have the attorneys who are making this claim justify what they should be paid for making this claim. It burdens the court unnecessarily, and the appellant believes improperly. Well, our existing – I think our existing case law burdens the district court judges. In any event, I know from past experience. And I would say – Nonetheless, that's the law, and they need to do it. The volume of caseload that assaults this circuit will probably continue, but it need not be as burdensome if the lawyers would identify out what they're claiming. I would make one final note on the fee award, that if it was so simple to discern that these constitutional rights were meritless, then why all the effort? Why all the research? Why all the work? The answer is it wasn't that simple. In fact, it wasn't just about two areas of first impression. In fact, there was precedent from the Ninth Circuit about constitutional bans involving precisely access. And I would suggest, Your Honor, that this is not the case to try to use a scalpel to separate the intertwining of cases. Not when you have areas of first impression. Not where you have federal statutes that support that claim. There are one-off cases. There are cases that are distinguishable in multiple defendant cases. I don't believe that this is the one. It would invite far more controversy and confusion, I believe, based on the record than it would clarity in these types of cases, where both the Ninth Circuit and the Supreme Court have made an effort to make this a clear, definitive point of law. I have nothing further unless the Court does. Thank you for your courtesy and time. Thank you. The matter will be submitted. We'll go back to the beginning of the calendar. Elias v. Dominguez.
judges: Brunetti, Tashima, Paez